**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

JANE HILL,                                       )
                    Plaintiff,                    )
                                                  )
        v.                                        )        CAUSE NO.: 2:07-CV-200-PRC
                                                  )
MICHAEL J. ASTRUE,                               )
Commissioner of Social Security                   )
Administration,                                   )
                    Defendant.                     )

**AMENDED OPINION AND ORDER[1]**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Jane Hill on June

15, 2007; and a Plaintiff's Memorandum in Support of Summary Judgment or Remand [DE 17],

filed on November 2, 2007.  Plaintiff requests that the Court reverse, or in the alternative, remand

the Administrative Law Judge's decision denying Plaintiff's claim for Disability Insurance Benefits

("DIB").  On January 17, 2008, the Commissioner filed a Defendant's Memorandum in Support of

the Commissioner's Decision.   On January 28, 2008, Plaintiff filed a Reply to Defendant's

Memorandum in Support of the Commissioner's Decision.  For the following reasons, the Court

remands this matter for further proceedings consistent with this Opinion and Order.

**PROCEDURAL BACKGROUND**

On March 1, 2004, Plaintiff filed an application for DIB, alleging that she has suffered from

a disability since August 30, 2003.  On June 14, 2004, the Social Security Administration denied

---

[1]This Opinion and Order amends the Court's original Opinion and Order, dated April 18, 2008, solely by
redacting information in compliance with Local Rule 5.2(a)(3), which protects against disclosure of certain personal
identifiers.

Plaintiff's application, and on September 21, 2004, denied her application again upon reconsideration. On November 10, 2004, Plaintiff filed a timely request for a hearing, which was held via video on February 1, 2006. Plaintiff and her attorney James Balanoff appeared at a teleconference center in Gary, Indiana before Administrative Law Judge Denise McDuffie Martin ("the ALJ"), who was in Orland Park, Illinois. Vocational Expert Glee Ann Kehr ("the VE") appeared and testified at the hearing as did Plaintiff's husband, Edgar Hill, Plaintiff's daughter, and Medical Expert Walter Miller, M.D. ("the ME"). In a decision dated February 16, 2006, the ALJ partially denied Plaintiff's application, finding her not disabled prior to her fifty-fifth birthday, also the date she entered a more advanced age category for social security purposes. The ALJ stated that prior to her fifty-fifth birthday, there were a significant number of jobs in the national economy that Plaintiff could have performed; however, the ALJ found that following the Plaintiff's fifty-fifth birthday, she could not have performed a significant number of jobs in the national economy.

Plaintiff filed a Request for Review with the Social Security Administration Appeals Council. Plaintiff requested review of the unfavorable portion of the ALJ's decision, which addressed her ability to work from August 30, 2003 through Plaintiff's fifty-fifth birthday. On December 11, 2006, the Appeals Council denied Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner.

Both parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## FACTS

### A. Background

Plaintiff was fifty-five years old at the time of the ALJ's February 16, 2006 decision. Plaintiff has six children, is 5'3" tall, and weighs approximately 175 pounds. Plaintiff has an eighth grade education and completed six weeks of training to become a certified nursing assistant ("CNA"). Her professional experience includes work as a CNA, a mental retardation aide, a bagel cook, a cashier, and a candy assembler. Plaintiff contends that her health problems began in 1997, but she was not disabled for DIB purposes until 2003.

### B. Medical Evidence

Beginning in 2003, Plaintiff consistently complained of pain in her left ankle and foot stemming from a car accident. Plaintiff contends that because of the pain, she has been unable to stand or sit for extended periods of time, that she must elevate her foot both during the day and while sleeping, and that she rarely leaves her home. Throughout her medical treatment and the administrative proceedings, Plaintiff also complained of back pain.

1.      *Dr. Thomas D. Kay*

Prior to her alleged onset of disability, Plaintiff underwent a course of treatment with Thomas D. Kay, M.D., for her back. On September 2, 1997, Dr. Kay treated Plaintiff and prescribed Cataflam, an anti-inflammatory medication. On September 30, 1997, Dr. Kay again saw Plaintiff and noted that though she had been through physical therapy, there were no significant signs of improvement. Dr. Kay diagnosed Plaintiff with symptomatic L5-S1 degenerative disc disease and told Plaintiff to keep stretching, but to avoid re-injuring her back. On October 28, 1997, Dr. Kay diagnosed Plaintiff with "persistent lower back pain with right leg radiculopathy . . . substantiated

3

by an absent Achilles reflex" and continued treatment with Cataflam.  R. at 212.  Also on October 28, 1997, Plaintiff completed a course of physical therapy and her physical therapist, Susan Harris, noted that Plaintiff's "[e]xtension of the spine aggravated her pain . . . [and] [t]runk [range of motion] remained limited."  R. at 226.

On November 11, 1997, Plaintiff underwent an EMG, which tests muscle activity.  The EMG showed increased activity in L4-S1 paraspinal muscles, suggestive of mild nerve root irritations.  On November 26, 1997, Plaintiff visited Dr. Kay and reported pain in her lower back as well as pain shooting down her right leg with numbness.  Dr. Kay prescribed epidural injections, but did not recommend surgery.  On January 13, 1998, Plaintiff saw Dr. Kay and reported pain from her lower back to her right leg.  Dr. Kay noted that Plaintiff had not responded to anti-inflammatory medication, epidural injections, physical therapy, or activity modification and diagnosed Plaintiff with persistent radiculopathy caused by degenerative disc disease.

2.    *Dr. Michael Leland*

On August 30, 2003, Plaintiff was involved in a head-on car collision and taken to Porter Memorial Hospital with an open fracture-dislocation of the left ankle, as well as seatbelt and steering wheel bruising.  Michael Leland, M.D., observed bone in Plaintiff's left ankle to be protruding approximately two inches.  Plaintiff underwent surgery on her left leg and ankle, and physicians fixed her fibula with hole plates and screws.  Plaintiff complained of right ankle pain, but no fracture appeared in an x-ray, and physicians placed the ankle in an air cast.  An x-ray of Plaintiff's spine revealed mild levoconvexed curvature of the lumbar spine with degenerative changes at the L5 level.  Plaintiff underwent postoperative physical therapy for ambulation training, non-weight bearing on

the left ankle, discharged her on August 31, 2003, and gave her a prescription for Lortab to treat her pain.

On September 5, 2003, Plaintiff called Dr. Leland complaining of discomfort and blood on her cast.  On September 7, 2003, Plaintiff filled a prescription for Lortab.  On September 8, 2003, Plaintiff visited Dr. Leland and complained of pain in her right ankle, but an x-ray only showed signs of an old injury.  Dr. Leland put Plaintiff's left foot in a short leg cast and planned to take it off and remove the screws in five weeks.  On October 16, 2003, an x-ray of Plaintiff's foot showed very little bone callus formation.  On October 23, 2003, Plaintiff received a prescription for hydrocodone and on October 29, 2003, Plaintiff saw Dr. Leland who noted swelling in her ankle.  Plaintiff underwent another x-ray, which showed slight widening of the mortise and an incomplete healing of the distal fibula.  Dr. Leland told Plaintiff to maintain only touchdown weight bearing because the ankle could shift and progress into traumatic arthritis, which would require an ankle fusion.

On December 16, 2003, Plaintiff again saw Dr. Leland, and a radiograph showed a slow progression of healing with some fracture lines still evident in the fibula.  Dr. Leland then switched Plaintiff from a boot to an air cast.

On September 27, 2005, Dr. Leland reported that Plaintiff had symptomatic hardware in her left ankle as well as traumatic arthritis.

3.      *Dr. Richard G. Nilges*

On May 25, 2004, Richard G. Nilges, M.D., a DDS-selected doctor, evaluated Plaintiff and observed her to be moderately obese, to have a stooped posture, to use a cane, to have edema around her left ankle, an inability to walk twenty feet without a cane, bony swelling over her left ankle with

a reduced range of motion, and an ability to squat to only fifty percent.  Dr. Nilges diagnosed

Plaintiff with obesity, a right medial malleolus and sternum fracture, and status post compound

fracture with operative repair of the left tibia and fibia above the ankle shortening the left leg.  Dr.

Nilges opined that Plaintiff could do prolonged sitting, limited walking and standing with no lifting

and carrying over five pounds, but would have difficulty getting to and from work and could not

work around heights or moving machinery.  Dr. Nilges also noted that although the radiograph

showed that Plaintiff's fractures had healed, there was evidence of early traumatic arthritis, which

may require ankle fusion.

4.      *State Agency physician Dr. Dobson*

On September 16, 2004, A. Dobson, M.D., a non-treating, non-examining State Agency

physician completed a Residual Functional Capacity Assessment ("RFC") form, indicating that

Plaintiff could perform light work with limitations in using her lower extremities, no climbing and

a need to avoid working around wet surfaces and hazards.  On December 6, 2004, x-rays of Plaintiff

showed probable post-traumatic arthritic change in the ankle and a loss of vertical stature of a joint

in Plaintiff's foot.  On January 7, 2005, a physician's report notes that an area within Plaintiff's

ankle widened and that early bone spurs had formed as well as a slight loss of joint space in her

ankle.

## C. Plaintiff's Hearing

On February 1, 2006, the ALJ convened the video conference hearing at which Plaintiff, her

attorney, Plaintiff's husband and daughter, the VE, and the ME appeared.  Plaintiff testified,

indicating that she injured her back in 1997 and in 2003, and injured both of her feet and her sternum

in a 2003 car accident.  Plaintiff testified that since the car accident, she has been unable to sit or

stand for any period of time longer than thirty to forty-five minutes due to ankle pain and has had to elevate her foot throughout the day.

Following her testimony, Plaintiff's husband, Edgar, and daughter testified. Edgar testified that on occasion, Plaintiff's ankle swelled so badly that part of the rod in her ankle became visible. He also testified that at times, Plaintiff had to elevate her foot to sleep without pain. Edgar recounted that Plaintiff had trouble walking across their home, a distance of twenty or thirty feet. Plaintiff's daughter testified that Plaintiff can stand on her ankle for only twenty minutes before it swells.

The ME testified that Plaintiff suffered from an open fracture and that physicians installed surgical pins and rods. The ME also testified that Plaintiff's injury would take a long time to heal and that Plaintiff suffered some complications. The ME concluded that Plaintiff's injuries were healing and that she could bear more weight and tolerate more than sedentary exertion. The ME testified that due to her impaired back, Plaintiff could do only light work and would suffer pain.

The VE testified next and inquired into Plaintiff's past work experiences and the amount of exertion required at those jobs. Plaintiff testified that as a candy maker, she lifted less than a pound and as a cashier, she lifted about twenty pounds while stocking and hanging up clothes. The VE testified that Plaintiff's past work as a bagel cook required medium physical exertion and was unskilled, that her position as a cashier was light and unskilled, that her CNA positions were medium and semiskilled, and that her mental retardation aide position was medium and semiskilled.

The ALJ then posed a hypothetical to the VE, describing a person of Plaintiff's age, education, and work experience, who was limited to light work with no work around moving machinery or heights, a need to avoid exposure to wet surfaces, and no climbing, balancing,

stooping, kneeling, crouching, or crawling. The VE responded that this person may be able to work as a cashier or in assembly. The ALJ then added to the hypothetical a need for this same individual to alternate sitting and standing, to which the VE responded that Plaintiff would be unable to perform any of her past jobs. The VE stated that 3,000 cashiering positions, which allow a sit/stand option, exist in the Chicagoland area. The VE further opined that if the limitation regarding elevating the foot to stool height was added, there would be no available jobs.

The ALJ then changed the hypothetical to a person with an ability to do sedentary work with all of the same limitations posed in the first hypothetical. The VE responded that this individual would not be able to perform any of Plaintiff's past work. Also, the VE testified that as of Plaintiff's fifty-fifth birthday, she would be classified as sedentary. The ALJ then reraised the first hypothetical, this time without the sit/stand option. The VE responded that such an individual could perform about 4,000 housekeeping positions, the 3,000 cashiering positions previously mentioned, 6,000 clerk positions, and 3,000 office helper positions in the current national economy. However, the VE testified that if the sit/stand option was added, the hospital positions would no longer be available as well as at least half of the clerk and office helper positions. The VE also testified that a stool of eight inches would be allowed, however, the height of an ottoman, which is about twenty inches, would preclude all work.

Plaintiff's attorney then posed a hypothetical to the VE asking about a person who is limited to standing or walking for at least two hours in an eight-hour workday, but being slow, unsteady, taking short steps, limping when using a cane, having a slow limping gait, and never being able to climb at all. The VE answered that this person would be classified as sedentary.

### D. ALJ's Decision

The ALJ concluded that Plaintiff was not disabled prior to her fifty-fifth birthday.  The ALJ found that Plaintiff had severe impairments from her motor vehicle accident ankle fracture, surgical repair, and degenerative disc disease of the lumbosacral spine.  The ALJ deemed Plaintiff's statements concerning her impairments not completely credible.  The ALJ found that Plaintiff had the RFC for light work that does not require more than occasional balancing, stooping, kneeling, crouching, crawling, or any climbing; would not place her in an environment with exposure to wet surfaces; would not involve working around moving machinery or at heights; would allow her to alternate between sitting and standing every thirty to forty-five minutes; and would allow her to elevate her leg to foot stool height for eight to ten minutes.  Based on the VE's testimony, the ALJ decided that Plaintiff could have performed work as a clerk or office helper until her fifty-fifth birthday, when her age category changed.  The ALJ determined that as of her fifty-fifth birthday, Plaintiff could not have performed a significant number of jobs in the national economy, and after that date, Plaintiff was disabled.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to [his] conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*,

362 F.3d 995, 995 (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689

(7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a

"disability" as defined by the Social Security Act and regulations.  The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

To be found disabled, the claimant's impairment must not only prevent her from doing her previous

work, but considering her age, education, and work experience, it must also prevent her from

engaging in any other type of substantial gainful activity that exists in significant numbers in the

economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry

to evaluate whether the claimant is entitled to benefits.  20 C.F.R. § 404.1520(a)(4).  The steps are:

(1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant is not

disabled, and the claim is denied; if no, the inquiry proceeds to Step 2.

(2) Does the claimant have an impairment or combination of impairments that are severe?

If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3.

(3) Does the impairment(s) meet or equal a listed impairment in the appendix to the

regulations?  If yes, the claimant is automatically considered disabled; if not, then the inquiry

proceeds to Step 4.

(4) Can the claimant do the claimant's past relevant work?  If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5.

(5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience?  If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(I)-(iv); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC.  "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations."  *Young*, 362 F.3d at 1000.  The ALJ must assess the RFC based on all relevant evidence of record.  *Id.* at 1001 (citing 20 C.F.R. § 404.1545(a)(1)).  The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ.  *Id.* at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Requesting reversal or remand, Plaintiff argues in her opening brief that (a) the ALJ improperly weighed the evidence and included unfounded limitations in her RFC finding; (b) the ALJ made an improper credibility finding that ignores SSR 96-7p and 20 C.F.R. § 404.1529; and (c) the ALJ made an erroneous Step Five decision.  The Commissioner disputes each of Plaintiff's arguments.  The Court will consider Plaintiff's arguments separately.

### A. ALJ's analysis of evidence and RFC finding

Plaintiff first argues that the ALJ erroneously found that Plaintiff maintained the RFC to perform light work.  Plaintiff contends that in making this finding, the ALJ wrongly dismissed the

opinion of an examining physician, misstated a State Agency doctor's findings, and relied only on the examining ME's opinion, as well as her own unfounded lay opinion. The Commissioner responds that the ALJ's findings are supported by substantial evidence and that Plaintiff has failed to explain how the ALJ's decision constitutes reversible error.

1.    *Physician opinions*

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact and determine the case accordingly. *See Richardson*, 402 U.S. at 399-400. The Court "will uphold an ALJ's decision if it is reached under the correct legal standard and if it is supported by substantial evidence." *Schmidt*, 201 F.3d at 972. In making the decision as to disability, the ALJ "will always consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [she] receive[s]." 20 C.F.R. § 416.927(b). Additionally, the ALJ will "evaluate every medical opinion [she] receive[s]." 20 C.F.R. § 416.927(d). State Agency physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation." 20 C.F.R. § 416.927(f)(2)(I). Therefore, the ALJ must consider the findings of State Agency medical consultants. *See id.* The ALJ's explanation should also refer to significant evidence that would support the opposite conclusion so that the reviewing court may "trace the ALJ's path of reasoning." *Clifford*, 227 F.3d at 874. In evaluating medical opinions, the ALJ should generally give greater weight to treating physicians than non-examining physicians. *See* 20 C.F.R. § 416.927(d)(1).

Here, Plaintiff argues that the ALJ gave greater weight to non-examining State Agency physicians' opinions in her evaluation of the medical evidence and made the "erroneous and inaccurate" mistake of rejecting examining physician, Dr. Nilges' evaluation and opinion. Pl.'s Br.

13

at 14.  The Court finds that the ALJ never decided that Dr. Nilges' opinion was incorrect; rather, she decided that his May 25, 2004, opinion was not persuasive because his evaluation of Plaintiff came only nine months after her accident.  The ALJ explained that subsequent medical records showed that Plaintiff continued to heal and her abilities improved after she saw Dr. Nilges.  For example, the ALJ considered the January 2005 report of Dr. Leland, who opined that Plaintiff's fracture had healed, though there were signs of traumatic arthritis.  Thus, the ALJ did not disregard Dr. Nilges' opinion, but instead found that it was not persuasive due to Plaintiff's subsequent improvement reflected in more recent reports.

In her decision, the ALJ explained that treating physicians, other than Dr. Nilges, did not provide assessments of Plaintiff.  Thus, for assessments, the ALJ relied on the testimony of the ME and the report of Dr. A. Dobson, a State Agency physician who reviewed Plaintiff's record in September 2004, and completed an RFC assessment form.  Dr. Dobson reviewed Plaintiff's record four months after Plaintiff's visit to Dr. Nilges.  The Commissioner concurs with the ALJ's reliance on Dr. Dobson's findings, which they interpret as an endorsement that Plaintiff could perform light work.  Plaintiff disputes this categorization of Dr. Dobson's findings and argues that Dr. Dobson concluded that Plaintiff was able to perform only sedentary work.  According to SSR 83-10, the primary difference between sedentary work and light work is that light work involves a good deal of walking and standing, while sedentary work requires only occasional walking and standing.  *See* SSR 83-10 at *5.  SSR 83-10 states that sedentary work requires no more than about two hours of walking and standing in an eight-hour workday, whereas light work requires up to six hours of standing and walking.  *See id.* at *6.

14

In his evaluation, Dr. Dobson concluded that Plaintiff could stand and/or walk for "at least" two hours in an eight-hour workday and could sit for about six hours in an eight-hour workday. R. at 177. Though his findings are similar to the criteria that would render Plaintiff appropriate for light work, it appears that the ALJ incorrectly concluded, based on Plaintiff's abilities to walk and stand, that Dr. Dobson found Plaintiff able to perform light work. The ALJ was incorrect to interpret Dr. Dobson's report that Plaintiff could stand and/or walk for at least two hours as an indication that Plaintiff could complete light work, which requires an ability to stand or walk for six hours in an eight-hour workday. In support of finding Plaintiff capable of performing light work, the ALJ also referred to the ME's opinion that Plaintiff could perform light work. However, the ALJ's misinterpretation of Dr. Dobson's finding remains unresolved. The ALJ's reasoning, when taking into account a correct interpretation of Dr. Dobson's report, is at this point unknown. Thus, the Court finds that the ALJ's conclusion as to Plaintiff's ability to perform light work is not supported by substantial evidence and remands this matter for further consideration of Plaintiff's ability to work at a light level of physical exertion.[2]

2.      *Limitations contained in the RFC finding*

Having found that the ALJ's consideration of the medical evidence, and specifically Dr. Dobson's findings, was not justified, the Court turns to examine the limitations contained in the ALJ's RFC finding. RFC is a measure of what an individual can do despite the limitations imposed

---

[2]Plaintiff also suggests that the ME was not qualified to render an opinion as to Plaintiff's feet and ankles because his specialty does not lie in that area of medicine. For support, Plaintiff points to the ME's biographical information contained on the American Medical Association's website. The Regulations require that an ME be a licensed physician, and do not address the issue of specialty practice. *See* 20 C.F.R. § 404.1513(a). In addition, the majority of the ME's findings are supported by other physicians in Plaintiff's medical records. *See Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). The lone ME finding that is not supported by additional physician records, the finding that Plaintiff can perform work at the light physical exertion level, is remanded pursuant to this Opinion and Order for further consideration. The ME's area of medical specialty requires no further instruction on remand.

by her impairments.  *See* 20 C.F.R. § 404.1545(a).  The determination of a claimant's RFC is a legal

decision rather than a medical one.  *See* 20 C.F.R. § 404.1527(e)(2); *Diaz*, 55 F.3d at 306 n.2.  The

RFC is an issue at Steps Four and Five of the sequential evaluation process.  *See* SSR 96-8p.  "The

RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an

individual's ability to do work-related activities."  *Id.*

Plaintiff argues that the ALJ's lay opinion formed the basis of a portion of her RFC finding

and thus she impermissibly played doctor.  In her decision, the ALJ held that "after careful

consideration of the entire record," Plaintiff had the RFC to perform light work that did not:

> require more than occasional balancing, stooping, kneeling, crouching, or crawling
> or any climbing, which would not place her in an environment with concentrated
> exposure to wetness, which would not involve working around machinery or at
> heights, and which would allow her to alternate between sitting and standing every
> thirty to forty-five minutes and to elevate her leg to foot stool height for a period of
> eight to ten minutes.

R. at 22.

The Court finds that much of the ALJ's RFC finding is supported by medical evidence of

record.  For example, Dr. Nilges opined that Plaintiff should not work around heights or moving

machinery.  The ALJ thus included height and moving machinery limitations in her findings.

Further, Drs. Nilges and Dobson concluded that wet weather would increase Plaintiff's pain.  The

ALJ's findings acknowledge this assessment, concluding that Plaintiff should avoid exposure to

wetness.  In addition, Dr. Dobson concluded that Plaintiff should never have to climb and should

only occasionally be subjected to balancing, stooping, kneeling, crouching, and crawling.  In her

findings, the ALJ dutifully found that Plaintiff should be limited to work requiring no more than

occasional balancing, stooping, kneeling, crouching, or crawling, and no climbing.  The ALJ also

16

determined that Plaintiff needed to alternate between sitting and standing every thirty to forty-five minutes.  This requirement is supported by Plaintiff's testimony at the hearing.

However, it appears that the ALJ's remaining RFC findings are unsupported by the evidence of record.  Without explanation, the ALJ  decided that Plaintiff needed to elevate her foot to stool height.  In her testimony, Plaintiff stated that she elevated her foot, but did not specify a height of elevation.  Thus, the basis for the ALJ's conclusion as to height of elevation is unknown.  Also, the ALJ decided that Plaintiff would only need to elevate her foot for eight to ten minutes, yet, again, the basis for this conclusion is unknown and not found in the record pursuant to the parties' briefing and the Court's review.  Thus, the Court cannot trace the ALJ's reasoning and now remands this matter for additional consideration of the limitations contained in the ALJ's RFC finding that were not supported by objective evidence.

## B.  ALJ's credibility determination

Plaintiff next argues that in considering her credibility, the ALJ failed to adequately analyze the factors provided by SSR 96-7p and 20 C.F.R. § 404.1529.  Further, Plaintiff argues that the ALJ failed to state the purported reasons why Plaintiff was not credible, as required by SSR 96-7p and 20 C.F.R. § 404.1529.  The Commissioner contends that the ALJ's credibility determination is supported by substantial evidence.

In making a credibility determination, SSR 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence.  *See* SSR 96-7p.  If an allegation of pain is not supported by the medical evidence and the claimant states that

17

the inability to work is due to significant pain, the ALJ must obtain detailed descriptions of claimant's daily activities by making specific inquiries about the effects of the pain.  *See Zurawski*, 245 F.3d at 887.

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find that a disability exists each time a claimant states that he or she is unable to work.  *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996).  However, SSR 96-7p provides that a claimant's statements regarding the intensity or persistence of her symptoms "may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7p at *6.  An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong."  *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citing *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)).

In addition, factors to be considered by an ALJ evaluating a claimant's complaint of pain include:

(i)     The individual's daily activities;
(ii)    The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
(v)     Treatment, other than medication, the individual received or has received for relief of pain or other symptoms;
(vi)    Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
(vii)   Other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); SSR 96-7p at *3.

Here, Plaintiff has consistently complained of pain in her foot and ankle.  At the hearing, Plaintiff testified that if forced to stand for an extended period of time, her foot hurts so bad that she cannot walk.  In her decision, the ALJ found, "After considering the evidence of record, . . . the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but . . . the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible."  R. at 22.  The ALJ explained that in making her finding, she "considered all the symptoms in accordance with the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p [and] . . . considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p and 96-6p."  *Id*.  The ALJ then discussed the medical evidence of record, detailing Plaintiff's treatment from August 2003 through September 2005.  The ALJ summarized the medical evidence as showing "that the fracture had healed within 12 months on [sic.] onset, but the claimant nevertheless has limitations that have persisted for more than 12 continuous months secondary to limited range of motion in the ankle."  R. at 23.  The ALJ did not mention pain as a lingering limitation.

The ALJ supported her credibility finding, in part, by relying on Plaintiff's testimony that she was able to engage in daily household activities.  The Commissioner points out that the ALJ also relied on the fact that Plaintiff had not been treated by a physician between January 2005 and September 2005 (though in Defendant's Response Brief, it is incorrectly stated that Plaintiff had not been treated by a doctor from January 2007 through September 2007).  Additionally, in her decision, the ALJ explained that Plaintiff's alleged limitations in her right ankle were not supported by evidence in the record, that there was no evidence to support Plaintiff's contention of significant swelling of her left ankle, and that there was no evidence that Plaintiff needed to use a cane.

19

The Court finds that there are several problems with the reasons offered by the ALJ in support of her credibility determination.  First, with regard to the ALJ finding that Plaintiff's lack of medical treatment was a reason supportive of finding her less than fully credible, Plaintiff explained that she does not have medical insurance and cannot afford treatment.  According to SSR 96-7p, if the ALJ finds Plaintiff not credible due to a lack of medical treatment, the ALJ must "recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment in a consistent manner."  SSR 96-7p.  One of the examples offered by the Regulations of a good reason for a lack of medical treatment is that "the individual may be unable to afford treatment and may not have access to free or low-cost medical services."  *Id*.  Therefore, the ALJ's first reason for finding that Plaintiff had a lack of credibility is unpersuasive.

Second, with regard to Plaintiff's daily activities, the ALJ, based on Plaintiff's testimony at the hearing, concluded that Plaintiff can attend to her personal needs by preparing meals, doing the dishes, making her bed, and driving twenty to thirty minutes every other day.  The ALJ relied partly on these findings to conclude that Plaintiff was not fully credible.  Though the ALJ was correct to consider Plaintiff's daily activities when determining disability, circuit precedent suggests that an individual may still be disabled while carrying on everyday tasks.  *See Zurawski*, 245 F.3d at 887; *Rousey v. Heckler*, 771 F.2d 1065, 1070 (7th Cir. 1985).  Also, the Seventh Circuit has reasoned that the ability to do household chores does not necessarily mean that an individual is able to function in a work environment.  *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006).  The activities that the ALJ found Plaintiff was able to perform are not particularly suggestive that Plaintiff was not

20

credible in her reports of pain.  Therefore, evidence of Plaintiff's ability to complete household tasks is a not a sufficient basis to conclude that Plaintiff is not fully credible.

The remaining reasons provided by the ALJ for finding that Plaintiff lacks credibility stem from the medical evidence of record.  Though the ALJ referred to SSR 96-7p, and represented that she considered the factors set forth by the ruling, it is evident that she failed to consider several of the factors in such a way that would allow for judicial review.  Notably, she did not discuss factors such as the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms.  *See* SSR 96-7p.  The factors that went unconsidered are relevant to a final conclusion regarding Plaintiff's credibility in her complaints of pain.  The Court acknowledges that consideration of each factor set forth by 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p is not mandatory.  *See Butera*, 173 F.3d at 1055; *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).  It is not sufficient, however, for the ALJ to "make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Zurawski*, 245 F.3d at 887 (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).  Though the ALJ did undertake an analysis of the objective medical evidence in this matter, she did not sufficiently consider Plaintiff's subjective claims of pain.

Based on the foregoing, the Court finds that the ALJ's review of the evidence is incomplete and resulted in a decision that is not sufficiently developed for review.  The Court does not find that the ALJ's credibility determination was patently wrong.  Rather, the Court requires greater explanation from the ALJ as to her credibility finding in order to make an informed finding upon review.  The Court remands this matter for further consideration of Plaintiff's credibility.

### C. ALJ's Step Five decision

Plaintiff next contends that the ALJ made an erroneous decision at Step Five of the sequential analysis. Plaintiff argues that the ALJ failed to incorporate all of Plaintiff's limitations into the hypotheticals offered to the VE. Plaintiff also argues that the ALJ failed to verify that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"), as required by SSR 00-4p. The Commissioner failed to respond to Plaintiff's specific arguments and argues only that the ALJ's findings were based on substantial evidence.

1.     *ALJ's hypotheticals to the VE*

At Step Five of the sequential analysis, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. If the answer is yes, then the claimant is not disabled, and the claim is denied; if the answer is no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(iv); *see also Scheck,* 357 F.3d at 699-700.

Here, the ALJ determined that Plaintiff had the ability to work as a clerk or office helper based on her RFC finding, which in part concluded that Plaintiff had the ability "to perform light work . . . which would allow her to alternate between sitting and standing every 30 to 45 minutes and to elevate her leg to foot stool height for a period of eight to ten minutes." R. at 22. This portion of the RFC finding contains three limitations: (1) limited mobility; (2) a limited ability to stand, which required alternating between sitting and standing; and (3) a need to elevate her foot to stool height for eight to ten minutes. Plaintiff contends that the ALJ did pose all three limitations to the VE, but failed to offer all three limitations in the same hypothetical.

The ALJ posed two hypotheticals, and several variations of those hypotheticals, to the VE. In her first hypothetical, the ALJ stated, ". . . assume an individual of claimant's age, education and

work experience who would be limited to light work, no work around moving machinery or at heights.  Should avoid concentrated exposure to wetness.  No climbing.  No balancing, stooping, kneeling, crouching or crawling."  R. at 279.  To this hypothetical, the ALJ then added the sit/stand option.  The VE responded that the hypothetical individual could work in approximately 3,000 cashiering positions available in the area.  The ALJ then added the foot elevation requirement to which the VE responded that there would then be no jobs available.  The VE later clarified her answer, stating that only if the footstool was over twelve to sixteen inches tall would all jobs be precluded.  If the foot stool was less than twelve to sixteen inches tall, the VE opined that the hypothetical individual may be able to work certain jobs.

Thus, the final version of the ALJ's first hypothetical includes all three limitations, in compliance with SSR 96-8p, which provides that the hypotheticals posed to the VE must be consistent with the ultimate RFC.  *See* SSR 96-8p; *Young*, 362 F.3d at 1003; *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004).  The hypothetical expressly includes the sit/stand and foot elevations limitations, and includes the mobility limitation in the light work restriction and the other restrictions offered in the hypothetical.  The Court finds that because the ALJ posed all of Plaintiff's limitations to the VE in a single hypothetical, the VE's opinions based on the hypotheticals provided are reliable.

2.    *VE questioning, the DOT, and SSR 00-4p*

Plaintiff also argues that the ALJ failed to verify that the VE's testimony was consistent with the DOT, as required by SSR 00-4p.  SSR 00-4p requires an ALJ who takes testimony from a VE

about the requirements of a particular job to determine whether that testimony is consistent with the

DOT.[3]  Specifically, SSR 00-4p requires:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2007 WL 1898704 at *4.  The regulations allow the ALJ to rely on either the VE or the

DOT when making a determination regarding available work for the claimant.  *See* 20 C.F.R. §

404.1566(d), (e) (2007).  If the VE's evidence and the DOT have an apparent conflict, the ALJ will

obtain a reasonable explanation for the conflict.  *See Prochaska,* 454 F.3d at 735.  Furthermore,

before the ALJ may rely on the VE's evidence as substantial evidence, she must make the SSR 00-

4p inquiry and elicit a response for any discrepancies.  *See Prochaska*, 454 F.3d at 735 (citing

*Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999)).  The SSR 00-4p ruling places the burden of

making the inquiry on the ALJ, not the claimant.  *See id*.

    In this case, the ALJ closed the hearing without questioning the VE as to whether her

testimony was consistent with the DOT.  As often is the case when the ALJ fails to verify whether

the VE's testimony was consistent with the DOT, there appear to be inconsistencies between the

VE's testimony and the DOT listings.  For example, the VE listed the office clerk position as a job

that Plaintiff could work and classified it as a sedentary position.  However, the DOT lists an office

clerk position as light work.  A sedentary position requires occasional walking or standing and a

---

[3]The DOT is published by the Department of Labor and provides detailed physical requirements for a variety of jobs.

light position requires a good deal of walking or standing. The inconsistency is problematic due to the earlier finding in this Opinion, which remanded this matter for further consideration of Plaintiff's ability to work at light physical exertion. It is thus unclear whether Plaintiff could have actually satisfied the demands of an office clerk position. And while the ALJ is entitled to ultimately adopt the VE's opinion, she must first resolve any inconsistencies between the VE's testimony and the DOT.

Following the requirements of SSR 00-4p would have allowed the ALJ an opportunity to resolve any inconsistencies prior to issuing her decision. However, the ALJ failed to do so and the Court remands this matter and instructs the ALJ to receive an answer from the VE as to the consistency between her testimony and the DOT, and as to all ways in which the VE's testimony is inconsistent, to resolve the inconsistencies.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ failed to (1) accurately evaluate the findings of Dr. Dobson; (2) adequately explain all of the limitations contained in her RFC finding; (3) adequately evaluate Plaintiff's credibility; and (4) comply with SSR 00-4p and verify whether the VE's testimony was consistent with the DOT. Therefore, the Court **GRANTS IN PART AND DENIES IN PART** the Plaintiff's Memorandum in Support of Summary Judgment or Remand [DE 17] and **REMANDS** this matter for further proceedings consistent with this Order. The Court Clerk is **DIRECTED** to delete the previous Opinion and Order PDF, currently docketed at DE # 22, from the docket in this matter.

SO ORDERED this 22nd day of April, 2008.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record